

NUMBERS 13-15-00231-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE MATTER OF M.E.D., A CHILD

**On appeal from the County Court at Law No. 2
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Longoria
Memorandum Opinion by Justice Longoria**

M.E.D.[1], a juvenile, was charged with theft. *See* TEX. PENAL CODE ANN. § 31.03 (West, Westlaw through 2015 R.S.). The trial judge found that the allegations were true. M.E.D. was ordered into the custody of the Texas Juvenile Justice Department. In a single issue, M.E.D. challenges the legal sufficiency of the evidence to support his adjudication of guilt for theft. We affirm.

---

[1] We refer to appellant by his initials in order to protect his privacy. *See* TEX. R. APP. P. 9.8(b).

# I. BACKGROUND

As of January 21, 2015, Paradise Auto Sales had a white Ford Windstar van in its inventory. R.A. and D.G., both juveniles, were together at Paradise Auto Sales when R.A. stole the key to the van. R.A. testified that he and D.G. went to M.E.D.'s house to wait for Paradise Auto Sales to close. Several hours later, R.A., D.G., and M.E.D. all began walking toward the dealership. While they were walking to the dealership, R.A. claims that he and D.G. informed M.E.D. of their plans to steal the van. R.A. stated that he and D.G. "knew that [M.E.D.] was on a monitor and we tried to talk him out of it but he still wanted to go." In response, M.E.D. removed the court-ordered GPS tracking unit he was wearing before they arrived at the dealership. R.A. testified that upon arriving at the dealership, "we made sure the dealership was closed." A car salesman that worked at Paradise Auto Sales was heading home when he noticed a couple of "youth[s]" standing next to the van. After he saw the van pull out of the dealership, he called 911. The police pulled over the vehicle and testified that R.A. was driving and M.E.D. was in the front passenger seat.

On February 10, 2015, M.E.D. was charged with theft of property of a value greater than $1,500 but less than $20,000. *See id.* M.E.D. elected to have a trial before the bench. The adjudication hearing was held on April 16, 2015. After hearing evidence and arguments, the trial court found the allegations of delinquent conduct to be "true" and decided that it was in M.E.D.'s best interest to place him in the custody of Texas Juvenile Justice Department. This appeal followed.

2

## II. LEGALLY SUFFICIENT EVIDENCE

In his sole issue on appeal, M.E.D. argues that the evidence is legally insufficient to support his conviction for theft.

### A.     Standard of Review and Applicable Law

Although juvenile cases are civil cases, challenges to the sufficiency of the evidence in such cases are resolved utilizing the same standard of review applicable in adult criminal cases. *In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Thus, we review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We defer to the fact finder's determinations on the weight and credibility of evidence. *Id.* at 904. When the record supports conflicting inferences, we presume the fact finder resolved the conflict in the prosecution's favor and defer to that determination. *See id.* It is not the State's burden to disprove "every conceivable alternative to the defendant's guilt"; the State must simply prove the essential elements of the crime beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013). Thus, on appeal, we determine only if a reasonable fact finder could have found the essential elements of theft beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).

The legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person commits the offense of theft if the person

3

unlawfully appropriates property with the intent to deprive the owner of the property without the owner's consent. TEX. PENAL CODE ANN. § 31.03 (West, Westlaw through 2015 R.S.). Under the law of parties, the State does not have to prove that a person physically committed the crime, but the evidence must be sufficient to show that even though the criminal conduct was performed by another, the defendant was still criminally responsible for that other person's behavior. *Id.* § 7.01(b)(c) (West, Westlaw through 2015 R.S.). To be criminally responsible for another person's conduct, a person must have acted with the "intent to promote or assist the commission" of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense. *Id.* § 7.02(a)(2) (West, Westlaw through 2015 R.S.).

Mere presence at a crime scene is insufficient to establish guilt under the law of parties. *See Gross v. State*, 380 S.W. 3d 181, 186 (Tex. Crim. App. 2012). However, presence at the crime scene can be sufficient when combined with evidence that the defendant encouraged the commission of the offense by his acts, words, or deeds. *Burdine v. State,* 719 S.W.2d 309, 315 (Tex. Crim. App. 1986). To determine whether the defendant was a party to the offense, the fact finder may "look to events occurring before, during, and after the commission of the offense" that show an "understanding and common design to do the prohibited act." *Ransom v. State,* 920 S.W. 2d 288, 302 (Tex. Crim. App. 1994). Circumstantial evidence can assist the fact finder in establishing party status. *See id.*

**B.    Discussion**

M.E.D. argues that the evidence is legally insufficient to support his conviction of theft. Specifically, he argues that the evidence clearly established that he did not

4

personally appropriate the van and that he did nothing to encourage or aid in the commission of the theft. The State agrees that M.E.D. did not physically appropriate the van. However, the State argues that the evidence is sufficient to show that M.E.D. was a party to the commission of the offense and did encourage and assist in the theft.

The evidence clearly established that R.A., D.G., and M.E.D. were all in the vehicle when it was pulled over by the local police officers. It further establishes that R.A. and D.G. told M.E.D. about their intentions to steal the car and that M.E.D. took off his GPS tracking unit before arriving at the dealership. M.E.D. argues that this is not enough to show that he encouraged the theft. In support of this proposition, M.E.D. cites a case in which J.W., a juvenile, was charged with aggravated assault. *See In re J.W.*, No. 14-12-00675-CV, 2014 WL 708484, at *2 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (mem. op.). J.W. and several of his friends were driving a vehicle they had stolen. *Id.* One of J.W.'s friends saw another car and decided he wanted to steal that one, too. *Id.* The driver of the stolen vehicle pulled over; J.W.'s friend held a shotgun to the other driver and ordered him out of the car. *Id.* The court of appeals found that J.W. was not a party to the aggravated assault because he did nothing to encourage his friend's independent actions to steal the other vehicle at gunpoint and did not know his friend's plans beforehand. *Id.*

However, J.W.'s case is materially different from the present case because there was evidence that M.E.D. knew that his friends intended to steal the van. J.W., on the other hand, was essentially a witness to his friend's aggravated robbery; J.W. did not know his friend was going to commit aggravated assault. *See id.* That case was not about J.W.'s criminal responsibility as to the actual car theft. *See id.* Here, M.E.D. knew

5

R.A. and D.G.'s plans before arriving at the dealership. R.A. and D.G. actively tried to prevent M.E.D. from coming along, but M.E.D. persisted and came along regardless. Furthermore, M.E.D. removed his GPS tracking unit to accompany his friends in their theft. All of these facts support the inference that M.E.D. understood his friends' plans and intended to encourage his friends in the commission of the offense. *See Ransom,* 920 S.W. 2d at 302. Also, R.A.'s statement that "we made sure the dealership was closed" suggests that all three secured the premises. Providing reconnaissance of the planned crime scene is enough to establish a defendant as a party to the offense. *See Johnson v. State,* 6 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). But M.E.D. also entered the van with R.A. and D.G., further supporting the inference that M.E.D. understood and accepted the "common design" to do the prohibited act. *See Ransom,* 920 S.W. 2d at 302. R.A. later testified that M.E.D. did "nothing" to assist in the theft, which conflicts with his earlier statement that M.E.D. helped secure the premises. However, the trial court presumably resolved this conflict in favor of the State. *See Wise*, 364 S.W.3d at 903. Looking at all the evidence in the light most favorable to the prosecution, we find that a reasonable fact finder could find beyond a reasonable doubt that M.E.D. was a party to the theft. *See id.*

We conclude that the evidence is legally sufficient to uphold M.E.D.'s adjudication. We overrule M.E.D.'s sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

NORA LONGORIA,
Justice

Delivered and filed the
24th day of November, 2015.